Case number 152278, Ana Maria Lopez-Erquicia v. Angela Weyne-Roig. Good morning, Your Honors. Good morning. May I reserve the two minutes for rebuttal? Yes. Thank you. Good morning, and may it please the Court. My name is Luis Blanco, and I represent Angela Weyne, the defendant appellant in this case, who for all pertinent times and still is the Commissioner of Insurance of Puerto Rico. Now, as I am sure you are well aware, we are here today discussing whether or not the District Court erred in denying Defendant Weyne's request for qualified immunity. The District Court denied defendants' motion for summary judgment. We appealed, and here we are. As such, this appeal requires this Court to resolve the single, straightforward, and dispositive legal question, which is whether or not, in light of the law as it existed as of May 2013, I'm sorry, yes, 2013, a reasonably objective officer placed in the same position as the defendant, Weyne, could have recently believed that an employee performing the duties inherent to the position formerly held by the plaintiff could lawfully be removed for political reasons. Contrary to plaintiff's advance in their brief, the issue here does not hinge upon any controversy of fact. Case law, particularly in this circuit, has solidly established that in this type of case, the governing document is the official job description, which details the duties of plaintiff's former position. The proper document is on the record and is not contested. It appears at the Appendix 165. So there's nothing in the record as to what the actual duties of the director were? We just have the position description? That is correct, Your Honor, but that is the, according to the case law, that should be the only document that the Court looks like, if it exists. As stated in Collazo Rivera v. Torres Gandavide, quoted in our brief, the Court established that the Court should look only at the inherent powers of the position, not the duties actually performed. In response to your question, Judge Thompson. This Court has specifically held that if a formal job description exists, it is important to look at the specifics of the document. Since the job description is the best, and oftentimes dispositive source for determining the inherent functions of the position. We cite case law on that issue on page 10 of our brief. Now, if we were to look at that document, the job description of the plaintiff, we would find that the plaintiff was empowered and required to, among other things, one, develop norms, procedures, and make official interpretations of regulations and statutes concerning her division. Two, as far as the personnel under her command, she was to implement, supervise, and evaluate the areas of recruitment, selection, training, development, performance, and disciplinary actions. Three, she would substitute the Deputy Commissioner, who by plaintiff's own admission, is the number two person in the agency hierarchy. By the way, the position of Deputy Commissioner is a trust position, similar to the one formerly held by Plaintiff Lopez herself, as she herself adverse in her complaint. Four, she was responsible for enacting and implementing the agency's annual work plan for the division that she directed. Five, she was to plan, coordinate, and direct the analysis of the insurance fraud within the division. Six, she was to supervise all suspicious and or fraudulent insurance claims. Seven, she was to supervise the entire investigation process. Eight, she was to analyze all relevant findings in order to determine how to proceed. Given that, why would her position be classified as a career position in the first place? Oh, I don't know the history behind that, Your Honor. It just is. Well, doesn't that show at least the intent that it not be considered a political or policymaking position? Well, again, the test here is to look at the job description and the powers that she had to determine whether they are politically sensitive or not. It's not an issue of just saying, well, it was classified as a career position, therefore it is not politically sensitive. Because there are cases out here of, in both instances, trust personnel whose job description points to it being a position that is not protected from political patronage. And also there is a case law of career personnel whose duties tend to and have been found to be politically sensitive in the are not protected from political patronage. How would we, if we accept your position, is there any bright line test or any, I mean, once you get off using how it's actually classified as a trust or non-trust position, you're into sort of a gray zone. And you're saying that it's somewhat of a gray zone. You're saying qualified immunity, therefore, applies. If we accept that argument, where does this draw the line? How far deep into the organizations would we go before it would be clear that it's a career position? Well, it is a career position. Well, but I mean, it's a position that is immune to patronage firing. I understand. Well, it's a case-by-case issue, Your Honor. I mean, this First Circuit Court has seen more qualified immunity cases than I am sure any other circuit. And they deal with them each on a case-by-case basis. And sometimes it goes one way and sometimes it goes the other. It would be some things happen on one side of the line and other things happen on the other. But then what do officials do if they don't know where that line is? I mean, can they fire someone or not? Don't they need to know? Well, objectively speaking, no. Objectively speaking, only the court can determine that. Objectively speaking, the court determines whether a reasonable officer in that person's shoes would have known or not known or believed or not believed. Your question, Judge Dyke, tends to suggest that the court should delve into subjective standards as to what that person actually do or what that person actually believe. And that is not what the case law says. The case law is very clear that the court should stay away from the subjective analysis and that a reasonable officer in his shoes or her shoes would have done or not done. Well, I think the point is it's hard for a reasonable officer to know where the line is. I'm sorry, sir? It is difficult for a reasonable officer to know where the line is. That's why qualified immunity exists, Your Honor, because mistakes can be made in that determination. And the issue is not... Finish that thought. I'm sorry, I ran out of time? Finish that thought. Okay. I'm sorry, I lost my train there for a moment. Thank you for the argument. Thank you. Good morning. May I please... May I please report? My name is Claudio Alif. I'm together with Mr. David Rodriguez-Byrne, who represents the appellee in this case. Your Honors, if we look at the appellant's brief, we can notice that the appellant relies on picked and chosen words that are contained in the profile of the position the plaintiff occupied in order to lead us to believe that those duties that are contained in the profile of the position are broad and open-ended so that a reasonable officer would have been mistakenly led to believe that the position was one not protected by the granting profession. Well, the way they're described is broad. Yes, but when we go to the profile of the position, which is contained at pages 165 through 168 of the appendix, we can see that we have to read that in a context. We have the section where it describes what the position responsibilities are generally. What is the degree of responsibility in terms of supervised supervision, which is very thorough according to the description in the profile. The nature of the assignment of the duties or investigations that this person conducted, therefore limiting in a very significant way the discretion this person had in the direction of the unit that she directed. I want to make sure I'm understanding that. Are you saying that the record that we should look at, we should consider all the case law, obviously, then the defendant is saying we should look at the skills profile, which is in the record, and that's it? Are you saying we go beyond that? Well, that's really the center of the analysis that the court will do, will engage into, as well as- I didn't hear a yes or no. Are you saying we should go beyond the skills profile? Well, certainly in the context of the case law that this circuit has decided in this aspect of the law. In what case do you point to in which our court, in determining whether a position was or was not protected from patronage changes, we relied on something other than the formal description of the job? Oh, certainly the cases of Jimenez-Fuentes versus Torres-Gaston-Vives, 807-502-236. And then are you saying that there are any factual disputes in this case regarding those elements of the record that we should rely on that go beyond the skills profile? Well, I have to contend that there are no factual disputes. Okay. The record is complete in terms of what the analysis that the officer should have done at the time she confronted the choice to remove this person from the position or not. But isn't it- I understand what the circuit authority is, but isn't it the case that a position description often bears very little relationship to the actual duties that the person performs? But this court has ruled that that's the guideline that the court is going to follow, because otherwise the court will be macro-managing every position that claims that it's protected or not protected based on not what the intention or the circumstances of an authority of the real position is, but what the duties were assigned at the particular moment in time. So the real controlling aspect of how an officer would make a decision is contained in this profile of the position or description of the position. What happens is that- So how does that help your position? Because the profile seems to suggest that this is not a position with patronage protection. I very respectfully disagree with you, because if we look at the itemized responsibilities of the position in a vacuum, certainly one can make that argument, but when you read the whole profile of the position, how those duties relate to the aspects of decision-making, autonomy, the fact that the authority is limited to conduct the investigations that are assigned, that the position is thoroughly supervised, that is contained in the profile of the position, precisely at page 165, it starts saying that this person's duties are limited. Are you saying that if we look carefully within the context of the description, that we will see the limitations that you're suggesting are really existent? Certainly, Your Honor. And I can direct you- And that we won't conclude if we do a careful scrutiny that these are policy-making or supervisory responsibilities. Well, that doesn't have to be an expert analysis. If we follow the decisions of this court in Lopez-Quinones versus Puerto Rico National Guard, the court, in that case, although it found that the defendant was entitled to the qualified immunity, made clear that the analysis that has to be done is not a generic and out-of-context analysis of the duties of the position. It has to look at how it impacts the agency and how it impacts how they relate into each other. How do you address the – I take it there's no dispute the deputy commissioner is a trust position under our law, the deputy commissioner itself. Yes, it's a trust position, which is the lower trust position in the agency. And so my question is, how do you deal with the fact that the duties and responsibilities for this position that's at issue here includes substituting for the deputy commissioner when required? If you look, it is when requested to do that. It's not a regular position. It is when requested, so it could very well never happen. And it's something that the officer can control. Because you have – the law created three tiers of trust positions. What difference would that make? If her job, if called upon to do it, would require that she step into the commissioner's shoes, what difference does it make? But that's a very incidental duty. So would that control the whole nature of the position when all the other elements of the duties or the positions and responsibilities are more akin to an auditor? This position really investigated matters that were assigned to her under thorough supervision, following the instructions of the supervisor, and just reported to that supervisor the results of that investigation. She did not have any decision-making on who to investigate, when to investigate, when to start or when to end. Yeah, but the position description also contemplates that to some extent that she's the face of that operation, that she's going to give interviews, talk to federal authorities about it and things like that. Every public employee who interacts with individuals in a daily basis or in any basis is the face of the institution. But because of that happen, that person becomes a person not protected under grantee exception? We certainly say that, no, that should not be also. And in fact, under the facts of this case, her interaction is limited to the investigative process that she is engaged on based on the instructions given by her supervisor, who is a very low-level trust position manager in the agency. In fact, what is the practical implication of our ruling in this case in terms of, do I correctly understand, if we were to rule against you here today and say the qualified immunity applies, that would not bar you from obtaining an injunction on behalf of your client, restoring your client to the position? And I assume it would not prevent you from recovering attorney's fees for if you were successful in that, but it would keep you in recovering damages from the defendant? Have I got the practical ramifications correct? Well, in terms of the police case, certainly that would be the case. But the fact is that this will be a step back from which the one this court took in Lopez-Quinones versus Puerto Rico National Guard. What are the damages if she succeeds? If I recall correctly, her principal attorney position had the same salary as the director position, right? Well, there are emotional damages suffered. There is certainly an impact on her opportunities to retire with a better salary because her salary growth opportunities are limited or basically there are none at this point. And there is something very important that answers a question that was asked before. This position, and I'm going to finish, this position is a career position, and the duties that were taken away from this position were not assigned to a trust position, one of those created by law specifically. They were assigned to another position that carries a career classification in the agency. I think that that's very telling in terms of the qualifications of this officer as a competent officer or whether she knowingly violated the law. Thank you. I would just like to address two quick points, Your Honors. First of all, a brother counsel here has repeatedly stated that the deputy commissioner is a lower tier trust position. No, the record is clear. It's the number two position in the Office of the Insurance Commissioner. In their brief, they get into some play of words in terms of translation. How do you translate deputy to English, to Spanish, et cetera? But the person we're talking about is the number two person in the hierarchy of the Office of Commissioner, and that is the person that this plaintiff has periodically called to substitute. Where do we draw the line? I mean, suppose we would rule for you relying on that, and then someone in personnel department in Puerto Rico or the legislature at the time says, aha, we'll just put in every job description that part of the job is to substitute for your supervisor when required. And then you have a daisy chain going right down to the lowest level position where someone would be filling in for someone who would be protected. How do we keep a ruling from you from essentially eliminating damages as realistic recovery in virtually all cases of this type, of which we have very many? Well, Puerto Rico law has internal procedures as to how to deal with what is written in a job description. I mean, this is not just somebody writing a description and filing it, and that's it. It goes through a certain process. It has its checks and balances. And once it is officially issued, this court is bound to accept it as the document that governs the duties of that position. Right, but the legislature tomorrow could pass a law saying every job description shall require substituting for your superior when required. Obviously, in that situation, my argument here would lose strength, undoubtedly, because it would not have the force that it has at the present time where it isn't an across-the-board grant. To be clear, do you agree that this is a protected position, but you're arguing only for qualified immunity? At this time, I am only arguing for qualified immunity, yes, because that is the only issue that is before the court at this time. Do you need one more minute to make your rebuttal point? Yeah, the other issue I just wanted to mention was the fact that the Federal Council seems to focus on several of the duties in the plaintiff's job description that tend to suggest that, no, it's a lower technical or sterile duty in terms of the qualified immunity test. I just want to state that, no, I mentioned in my main argument a number of functions that are clearly policymaking. As a matter of fact, even the district court in ruling on this issue determined that these were quite potentially policymaking duties. In page 34 of the opinion and order, the court says, that a reasonable officer could mistakenly judge whether an employee falls within the LROD grantee exception, and in this case, defendant Wayne could have done so because some of plaintiff's duties indicate that her position could involve matters that are open to discretion, which in turn could involve policymaking. I respectfully suggest that that's almost a definition of qualified immunity right there. How the district court could go from that statement to denying qualified immunity? Thank you. Thank you.